United States District Court
Southern District of Texas

**ENTERED**

October 25, 2017

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| NAYADE I. GARZA, Et Al., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:17cv82 |
| | § | |
| J.P. MORGAN, ALTERNATIVE LOAN | § | |
| TRUST, 2007-SI, MORTGAGE PASS- | § | |
| THROUGH CERTIFICATES, Et Al., | § | |
| Defendants. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of the "Motion for Summary Judgment and Motion for Judgment Based on the Pleadings" (hereinafter, Defendants' "Motion" or "Motion for Summary Judgment") filed jointly by the two Defendants in this lawsuit. Dkt. No. 12. Defendants identify themselves as "U.S. Bank, N.A. as Trustee on behalf of the Holders of the J.P. Morgan Alternative Loan Trust, 2007-51, Mortgage Pass-Through Certificates (improperly named as J.P. Morgan Alternative Loan Trust, 2007-S1, Mortgage Pass-Through Certificates" and "Select Portfolio Servicing, Inc." (hereinafter, "Trustee" and "SPS" or, collectively, "Defendants"). *Id.* at 1. Plaintiffs Nayade I. Garza and Juan Garcia, Jr., have not filed a response to Defendants' Motion, but they have filed an opposed "Memorandum in Support of Motion for Leave to File Amended Pleading" (hereinafter, Plaintiffs' "Motion to Amend"). Dkt. No. 13. Plaintiffs' Motion to Amend seeks to join a new, non-diverse defendant by

amending their "Original Petition for Wrongful Foreclosure [and] Injunctive Relief" (hereinafter, Plaintiffs' "Original Petition"). *Id.* For the reasons provided below, it is recommended that: (1) Defendants' Motion (Dkt. No. 12) be **GRANTED**; (2) Plaintiffs' Motion to Amend (Dkt. No. 13) be **DENIED**; and (3) Plaintiffs' Original Petition be dismissed with prejudice.

## I. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. Statement of the Case

Defendants timely removed this civil action from the 357th Judicial District Court of Cameron County, Texas on April 12, 2017. Dkt. No. 1. Plaintiffs' Original Petition asserts that Defendants wrongfully foreclosed upon their homestead property, located at 5633 Rustic Manor Drive in Brownsville, Texas. Dkt. No. 1-4 at 1-3; *see also* Dkt. No. 1-5 at 1. Plaintiffs' Original Petition challenges proceedings connected to the foreclosure of their home and purports to raise claims for wrongful foreclosure, negligent misrepresentation, fraud, fraud by nondisclosure, common law fraud, breach of contract, promissory estoppel, and violations of the Deceptive Trade Practices Act ("DTPA"). Dkt. No. 1-4 at 1, 3-7. Plaintiffs' Original Petition also seeks various types of relief, including equitable relief. *Id.* at 7-12.

Defendants filed their instant Motion for Summary Judgment on July 21, 2017. Dkt. No. 12. Plaintiffs have not filed a response. On July 30, 2017, nine days

after Defendants filed their Motion for Summary Judgment, and nine days after the July 21, 2017 deadline to join new parties (*see* Dkt. No. 11 at 1), Plaintiffs filed their Motion to Amend, seeking to add Defendants' outside foreclosure counsel, Shapiro Schwartz, L.L.P., as a new party.  Dkt. No. 13 at 2.[1]  Plaintiffs indicate that the law firm must be joined as a defendant because one or more of its members "were integral entities of the transactions by and between Plaintiffs and Defendants[,]" such that the law firm is also responsible for proximately causing Plaintiffs' injuries.  *Id.* at 2.  Defendants' "Response in Opposition to Plaintiffs' Memorandum in Support of Motion for Leave to File Amended Pleading to Add Non-Diverse Party" (hereinafter, Defendants' "Response") asserts that the Court should deny Plaintiffs' untimely Motion to Amend because Plaintiffs are seeking to add the law firm for the sole purpose of defeating diversity jurisdiction.  Dkt. No. 14 at 1.

## III.  Legal Standards

**FED. R. CIV. P. 56.**   The standard applied when ruling on a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 56(a).  In pertinent part, Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*, *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same).  Mere allegations of a

---

[1]  Plaintiffs' Motion to Amend refers to Defendants' foreclosure counsel as "Shapiro and Shwartz."  Dkt. No. 13 at 2.  Defendants' submissions indicate that Plaintiffs' reference to the firm is a misspelled reference to the Houston firm of Shapiro Schwartz, L.L.P.  *See* Dkt. Nos. 14 and 12-6 at 2.

factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A fact is material if it might affect the outcome of the lawsuit under the governing law.  *Anderson*, 477 U.S. 242, 248.  A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*  Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict.  If reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.  *Id.* at 249.

The movant on a summary judgment motion bears the initial burden of providing the court with a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  The burden then shifts to the resisting party to present affirmative evidence to defeat the motion.  *Anderson*, 477 U.S. 242, 257.  All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "The court need consider only the cited materials, but it may consider other materials in the record."  FED. R. CIV. P. 56(c)(3).

**FED. R. CIV. P. Rule 12(c).**  Rule 12(c) of the Federal Rules of Civil Procedure provides that a party may file a motion for judgment on the pleadings if the pleadings are closed and the motion will not delay the trial.  FED. R. CIV. P.

12(c).   A Rule 12(c) motion is appropriate when "the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quotation marks and citation omitted).   The standards for dismissal under Rule 12(c) are the same as those under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010).

Dismissal is appropriate under Rule 12(b)(6) if the plaintiff fails "to state a claim upon which relief can be granted."   FED. R. CIV. P. 12(b)(6).   In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court "confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a)[.]"   *Richter v. Nationstar Mortgage, LLC*, Civil Action No. H–17–2021, 2017 WL 4155477, at *1 (S.D. Tex., 2017) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555 and *Ashcroft v. Iqbal*, 556 U.S. at 678-80).   Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).   To withstand a Rule 12(b)(6) challenge, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570.   This means that a complaint, taken as a whole, "'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory[.]'"   *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotation marks omitted; emphasis in original)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* Although the Supreme Court in *Twombly* stressed that it did not impose a probability standard at the pleading stage, an allegation of a mere possibility of relief does not satisfy the threshold requirement of Rule 8(a)(2) that the "plain statement" of a claim include factual allegations "plausibly suggesting (not merely consistent with)" an entitlement to relief. *Id.* at 557. A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions[.]" *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

When considering whether judgment on the pleadings is appropriate, courts are to consider the pleadings alone. *Richter v. Nationstar Mortgage, LLC*, 2017 WL 4155477, at *2 (citing *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002)). Still, under Rule 12(b)(6) and Rule 12(c), courts may also consider the documents that a defendant attaches to its motion to dismiss if the documents "are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004); and 5B

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 509–10 (3d ed. 2004)).  Further, if an exhibit is attached to a plaintiff's complaint, it is considered part of the complaint "for all purposes."  *Id*. (citing FED. R. CIV. P. 10(c); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 375 (5th Cir. 2004)).

## IV. Discussion

**A. Defendants' Motion for Summary Judgment**.  Defendants filed their Motion for Summary Judgment on July 21, 2017.  Dkt. No. 12.  As of today's date, Plaintiffs have not filed a response.  Plaintiffs' Motion to Amend does reference the filing of Defendants' Motion, but it does not substantively respond to the arguments contained in Defendants' Motion.  Dkt. No. 13 at 2.

Pursuant to Local Rule 7.3, Defendants' Motion for Summary Judgment may be "submitted to the judge 21 days from filing" for disposition, without notice to the parties.  *See* Local Rules of the United States District Court for the Southern District of Texas, Rule 7.3.  Local Rule 7.4 provides that a failure to respond to a motion "will be taken as a representation of no opposition."  *Id*., Rule 7.4. Nevertheless, "a district court may not grant summary judgment by default simply because there is no opposition to the motion[.]"  *Atain Specialty Ins. Co. v. Sai Darshan Corp*., 226 F. Supp. 3d 807, 813 (S.D. Tex. 2016); *Solis v. Wal-Mart Stores E., L.P.*, No. CIV.A. B-07-205, 2010 WL 968150, at *1–2 (S.D. Tex. Mar. 11, 2010) (same).  To obtain summary judgment when the nonmoving party has failed to

respond, the movant must demonstrate an entitlement to summary judgment as a matter of law. *Atain Specialty Ins. Co.*, 226 F. Supp. 3d 807, 813 (citing *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988) and *John v. Louisiana (Bd. of Trustees)*, 757 F.2d 698, 708 (5th Cir. l985)).

Defendants argue that they are entitled to summary judgment on each of Plaintiffs' claims as a matter of law. Dkt. No. 12 at 2 ("[A]ll of [Plaintiffs'] claims fail as a matter of law."). In support of their Motion, Defendants make the following allegations of fact.

1. The foreclosure sale at issue in this lawsuit occurred on March 7, 2017. Dkt. No. 12 at 1; Dkt. No. 12-1 at 2 (citing Dkt. No. 12-7). On or about January 11, 2007, Plaintiff Nayade I. Garza executed and delivered a Promissory Note (hereinafter, the "Note"), made payable to the original lender, American Home Mortgage ("AHM") and its assigns. Dkt. No. 12 at 2 (citing Dkt. No. 12-2 at 1-3). Pursuant to the terms of the Note, Garza promised to pay the principal amount of $127,260.00, plus interest. *Id.* On or about January 11, 2007, Garza and her husband, Plaintiff Juan Jose Garcia, executed a Deed of Trust, which secured the Note and established a first lien on the property located at 5633 Rustic Manor Drive in Brownsville, Texas (hereinafter, the "Property"). *Id.* (citing Dkt. No. 12-3).

2. The Note was endorsed in blank by AHM. Dkt. No. 12 at 2 (citing Dkt. No. 12-1 at 1 and Dkt. No. 12-2). "On or about April 9, 2013, Mortgage Electronic Registration Systems, Inc. ("MERS") assigned the Deed of Trust to Trustee as evidenced by an Assignment recorded in the real property records of Cameron

County, Texas as Instrument No. 2013-13588." *Id.* at 3 (citing Dkt. No. 12-4).  At the time of the March 7, 2017 foreclosure sale, Trustee was the mortgagee.  *Id.* Trustee currently owns and holds the Note, and is legally authorized to enforce the Note.  *Id.*  At all material times, SPS functioned as the mortgage servicer and attorney-in-fact for Trustee.  *Id.* (citing Dkt. No. 12-8).

3.  At some point prior to September 24, 2015, Garza failed to make timely mortgage payments and defaulted under the terms of the Note.  Dkt. No. 12 at 3. On September 24, 2015, SPS sent Garza a Notice of Default, informing her of the amount that she must pay to cure the default.  *Id.* (citing Dkt. No. 12-5).  Garza did not cure the default.  *Id.*  Through its foreclosure counsel, Trustee sent Garza a 'Notice of Acceleration and Posting" on January 30, 2017.  *Id.* (citing Dkt. No. 12-6). The Notice of Acceleration and Posting notified Garza that the Property would be sold on March 7, 2017, if she did not pay all sums due under the Note.  Dkt. No. 12-6 at 2.  Trustee foreclosed on the property on March 7, 2017.  Dkt. No. 12 at 3.

Defendants support their Motion with eight exhibits.  *See* Dkt. Nos. 12-1 through 12-8.  The first exhibit contains a declaration submitted by Defendant SPS, and signed by Lucretia Birkinshaw, a "Document Control Officer" for SPS.  Dkt. No. 12-1.  This declaration correctly describes and authenticates Defendants' exhibits. *See id.* at 1-3 and Dkt. Nos. 12-2 through 12-8.  This declaration, coupled with Defendants' other exhibits, present prima facie evidence that Defendants' foreclosure sale was proper.  *See* Dkt. Nos. 12-1 through 12-8; *Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264, 266 (Tex.App. Hous. [1 Dist.],

1991) (unless rebutted by competent evidence, a substitute trustee's deed which recites compliance with all of the terms of a deed of trust will constitute prima facie evidence that foreclosure sale was proper) (citations omitted).

Plaintiffs have not disputed this prima facie evidence or Defendants' above-summarized allegations of fact.  In support of all of their claims, however, Plaintiffs' Original Petition makes the following factual allegations.

1.  At some point after purchasing the Property, Plaintiffs became seriously delinquent under the terms of the Note.  Dkt. No. 1-4 at 2.  At some point after the Note was executed, it was sold, transferred, or assigned to SPS.  *Id*.  Plaintiffs and SPS "engaged in a series of interactions that led to an agreement wherein Plaintiffs were to deposit Forty-Five Thousand Dollars ($45,000.00) with SPS and Plaintiffs' Note was either to be modified or reinstated."  *Id*. at 3.  Plaintiffs and SPS reached this agreement at approximately 8 p.m. on March 6, 2017.  Because Plaintiffs' bank had already closed for the day, Plaintiffs offered to transfer the money the next morning.  Dkt. No. 1-5 at 2.

2.  Plaintiffs confirmed that they had the money on March 7, 2017.  Dkt. No. 1-5 at 2.  Plaintiffs were not informed that, if they failed to transfer the money by a certain time on March 7, 2017, then the foreclosure would proceed.  *Id*.  At some later point, the servicing agent informed Plaintiffs that they could not transfer the money because the foreclosure had already occurred.  *Id*.  Defendants did not inform Plaintiffs that this could occur, and Plaintiffs relied upon the servicing agent's statements during negotiations.  *Id*.  In particular, Plaintiffs relied upon the

servicing agent's statement that they had reached an agreement. *Id*. Thereafter, SPS hired the law firm of Shapiro Schwartz L.L.P. to evict Plaintiffs from their home. Dkt. No. 1-4 at 3. The law firm provided Plaintiffs with a three-day eviction notice on March 26, 2017. *Id*.

Based upon these facts, Plaintiffs' Original Petition asserts a variety of claims. Dkt. No. 1-4 at 1-12. The Court will address each of Plaintiffs' claims, although not in the order presented.

**Wrongful Foreclosure**. As Defendants correctly note (*see* Dkt. No. 12 at 14), Plaintiffs' Original Petition makes reference to a claim for "wrongful foreclosure" (*see* Dkt. No. 1-4 at 1), but their Original Petition does not actually include a wrongful foreclosure claim. Dkt. No. 1-4 at 1-12. Under Texas law, a plaintiff asserting a claim for wrongful foreclosure must ordinarily show: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726 (5th Cir. 2013) (quotation marks and citation omitted); *Taylor v. Ditech Financial, LLC*, Civil Action No. H–16–2465, 2017 WL 2362493, at *5 (S.D. Tex., May 31, 2017) (same). Plaintiffs have not identified any defects in the foreclosure sale proceedings, nor have they alleged that the Property was sold at a grossly inadequate price. As such, Plaintiffs have also failed to show a causal connection between an identified defect and a grossly inadequate selling price.

Moreover, completed foreclosures are subject to the presumption "that all prerequisites to the sale have been performed and that provisions for waiver of notice are valid." *Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264, 266 (citing *Chapa v. Herbster*, 653 S.W.2d 594, 600 (Tex.App.—Tyler 1983, no writ) and *Phillips v. Whiteside*, 426 S.W.2d 350, 352 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ)). Defendants have submitted the Substitute Trustee's Deed, which recites compliance with the conditions of the Deed of Trust. Dkt. No. 12-7. The Substitute Trustee's Deed constitutes prima facie evidence that the foreclosure sale was valid. *See Deposit Ins. Bridge Bank, N.A., Dallas,* 804 S.W.2d 264, 266 (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) and "*Kirkman v. Amarillo Sav. Ass'n*, 483 S.W.2d 302, 306 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.) (such recitals are presumed to be correct, unless rebutted by competent evidence)"). Plaintiffs have not rebutted the recitals contained in the Substitute Trustee's Deed with competent evidence. To the extent that Plaintiffs seek relief under a wrongful foreclosure theory, then, they have failed to state a claim.[2]

**Breach of Contract**. Plaintiffs contend that "defendants breached defendants contract with Plaintiffs via Defendants' acts and omissions as referenced above for which Plaintiffs sue all defendants." Dkt. No. 1-4 at 7 (errors in original).

---

[2] Plaintiffs did not include a wrongful foreclosure claim in their proposed First Amended Original Complaint. *See* Dkt. No. 13-2. Their omission of the claim constitutes some evidence that Plaintiffs do not wish to pursue a wrongful foreclosure claim.

Aside from incorporating their above-summarized factual allegations by reference, Plaintiffs make no other assertions in support of their breach of contract claim. *Id.*

Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347–48 (5th Cir. 2016) (citing *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015); *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex.App.-El Paso 2009, no pet.)). To prevail, a plaintiff must identify a contract and the specific provisions of that contract that the defendant allegedly breached. *Matthews v. JPMorgan Chase Bank, N.A.*, Civil Action No. H–14–2266, 2015 WL 892954, at *2 (S.D.Tex., Mar. 1, 2015) (citing *Blakeley v. Boltinghouse*, No. 03–cv–4901, 2005 WL 1185944, at *5 (S.D.Tex. May 4, 2005)).

Further, claims alleging the breach of an oral contract are often barred by the statute of frauds. *Matthews v. JPMorgan Chase Bank, N.A.*, 2015 WL 892954, at *2 (citing Tex. Bus. & Com. Code § 26.02(b) and finding that an alleged oral promise not to foreclose on a mortgage loan was barred by the statue of frauds because the loan agreement was for more than $50,000.00). The statute of frauds provides that, "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. &

Com. Code § 26.02(b).  The statute of frauds defines a "loan agreement" to include promissory notes and deeds of trust.  *Id*. § 26.02(a)(2).

If the statute of frauds applies to a loan agreement, then it will apply to "any subsequent oral modification" to the agreement.  *Garcia v. Wells Fargo Bank, N.A.*, Civil Action No. SA-17-CV-747-XR, 2017 WL 4448243, at *2 (W.D. Tex., Oct. 5, 2017) (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) ("An agreement regarding the transfer of the property or modification of a loan must . . . be in writing to be valid."); and *SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.)). Further, "'[a]n agreement to delay foreclosure is subject to the Texas statute of frauds, and, accordingly, must be in writing to be enforceable.'" *Id.* (quoting *Milton v. U.S. Bank N.A.*, 508 F. App'x. 326, 328–29 (5th Cir. 2013)).

To the extent that Plaintiffs are claiming that Defendants breached the alleged March 6, 2017 Agreement regarding the modification or reinstatement of their Note (hereinafter referred to as the "March 6th Agreement"), Plaintiffs have not shown that they tendered performance pursuant to that Agreement, nor have they shown how Defendants' alleged breach caused their damages.  Plaintiffs' claim fails for these reasons alone.  *See Crose v. Humana Ins. Co.*, 823 F.3d 344, 347–48. Plaintiffs have also failed to produce evidence indicating that the March 6, 2017 Agreement was reduced to writing.  Thus, if Plaintiffs are alleging that Defendants breached the March 6th Agreement, Plaintiffs' claim is also barred by the statute of frauds because the loan amount at issue was $127,260.00, far in excess of

$50,000.00. *See* Tex. Bus. & Com. Code § 26.02(b); *Matthews v. JPMorgan Chase Bank, N.A.*, 2015 WL 892954, at *2.

To the extent that Plaintiffs are alleging that Defendants breached some other contract, they have not identified: (1) the contract allegedly breached by Defendants; (2) the acts or omissions constituting the breach; (3) their own damages; or (4) their own performance. Accordingly, Plaintiffs' breach of contract claim is subject to dismissal. *See Crose v. Humana Ins. Co.*, 823 F.3d 344, 347–48; *Garcia v. Wells Fargo Bank, N.A.*, 2017 WL 4448243, at *2; *Matthews*, 2015 WL 892954, at *2.

**Promissory Estoppel**. Under the heading "Promissory Estoppel," Plaintiffs demand specific performance of the March 6th Agreement. Dkt. No. 1-4. Plaintiffs state that Defendants promised Plaintiffs that they "would enter and had entered into an agreement subject to the deposit of certain funds which Plaintiff were ready to performed but Defendants breached said agreement." *Id*. at 8 (errors in original). Plaintiffs claim that they relied upon Defendants' promise and conveyed that they would perform, but were "stopped by Defendants through their course of actions and omission referenced in this petition." *Id*. (errors in original). Plaintiffs contend that their reliance on Defendants' promise caused them to suffer damages in the form of "wrongful foreclosure, imminent eviction, mental anguish, family distress, court costs, and attorney fees." *Id*.

"Promissory estoppel is a 'narrow exception to the statute of frauds.'" *Miller v. CitiMortgage, Inc.*, No 3:11–cv–2786, 2013 WL 4766808, at *7 (N.D. Tex. Sept. 5,

2013) (quoting *Trammel Crow Co. v. Harkinson*, 944 S.W.2d 631, 636 (Tex. 1997)).
To prevail on a promissory estoppel claim, the plaintiff must show:  (1) the existence
of a promise; (2) plaintiff's foreseeable reliance on the promise; and (3) substantial,
detrimental reliance.  *Matthews*, 2015 WL 892954, at *2 (citing *Metro. Life Ins. Co.
v. Haden & Co.*, 158 F.3d 584, 584 (5th Cir. 1998)).

> "For promissory estoppel to create an exception to the statute of
> frauds, there must have been a promise to sign a written agreement
> that had been prepared and that would satisfy the requirement of the
> statute of frauds."  *1001 McKinney Ltd. v. Credit Suisse First Boston
> Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.-Houston [14th Dist.]
> 2005, pet. denied) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex.
> 1982)); *see also Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x
> 233, 239 (5th Cir. 2014) (unpublished) ("The claim that Wells Fargo
> said the Williamses had been approved for a modification . . . does not
> include an allegation that there was a modification agreement 'that
> had already been prepared or whose wording had been agreed upon
> that would satisfy the statute of frauds.'" (quoting *1001 McKinney Ltd.*,
> 192 S.W.3d at 29; *Southmark Corp. v. Life Investors*, Inc., 851 F.2d
> 763, 769 (5th Cir. 1988))).
>
> "'A promise to prepare a written contract is not sufficient.  The
> defendant must have promised to sign a particular agreement which
> was in writing at the time." *George–Baunchand v. Wells Fargo Home
> Mortg., Inc.*, No. 10–cv–3828, 2011 WL 6250785, at *7 (S.D. Tex. Dec.
> 14, 2011) (quoting *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741
> (Tex. App. Houston [14th Dist.] 1992, writ denied)).

*Id.* at 2-3.

Here, at a minimum, Plaintiffs have not demonstrated that Defendants
promised to sign a particular agreement that was in writing on March 6, 2017.
They have also failed to specify that the parties had agreed to wording that would
satisfy the statute of frauds.  Their promissory estoppel claim should be dismissed.
*See Matthews*, 2015 WL 892954, at *2.

**Plaintiffs' Fraud Claims.**  Plaintiffs' Original Petition purports to allege claims for fraud, fraud by nondisclosure, and common-law fraud.  Dkt. No. 1-4 at 5.  In support of their fraud claim, Plaintiffs merely incorporate their factual allegations by reference and state that "Defendants by their acts and omissions committed fraud."  *Id.*  In support of their fraud-by-nondisclosure claim, Plaintiffs contend that Defendants failed to disclose "through the entire process and up to the day Defendants requested that Plaintiffs deposit $45,000,00, that Defendants were proceeding with the foreclosure and did proceed and foreclosed on Plaintiffs' home.  *Id.* (errors in original).  In support of their common-law fraud claim, Plaintiffs assert that Defendants represented that an agreement had been reached, with the "intent and or expectation that Plaintiffs would not take any defensive actions against a dormant foreclosure[.]"  *Id.* (errors in original).  Plaintiffs argue that Defendants knew that their representations to Plaintiffs were false, and state that they reasonably relied upon Defendants' false representations.  *Id.* at 5-7.

To prevail on a claim of common-law fraud under Texas law, a plaintiff must show that:  (1) the alleged speaker made a material representation; (2) the representation was false; (3) the speaker knew the representation was false when making the representation, or made the representation as a positive assertion without any knowledge of its truth; (4) the speaker made the representation, intending that the plaintiff would act upon it; (5) the plaintiff relied upon the representation and acted upon it; and (6) the plaintiff suffered injury as a result of

their reliance.  *In re First Merit Bank*, N.A., 52 S.W.3d 749, 758 (Tex. 2001); *Taylor v. Ditech Financial, LLC*, 2017 WL 2362493, at *3.

Claims alleging fraud by nondisclosure or concealment in Texas must satisfy "all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005) (citing cases); *Wise v. Wilmoth*, No. 3:16-CV-1039-M-BH, 2017 WL 3267924, at *11 (N.D.Tex., July 03, 2017) (same); *Soto v. Lloyds*, CIVIL ACTION NO. 5:15–CV–86, 2016 WL 6883174, at *3 (S.D.Tex., Aug. 19, 2016) (same). Specifically, to prevail on a fraud-by-nondisclosure claim, the plaintiff must show that:

> (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001).

*Rivers v. Wells Fargo Home Mortg.*, Civil Action No. H–12–2616, 2013 WL 1389977, at *2 (S.D.Tex., Apr. 4, 2013).

Federal Rule of Civil Procedure 9(b) applies to fraud and fraud-by nondisclosure claims. FED. R. CIV. P. 9(b); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) ("In cases concerning fraudulent misrepresentation and

omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."); *Reveille Trucking, Inc. v. Lear Corporation*, 2017 WL 661521, at *16 (S.D.Tex., Feb. 17, 2017) ("'Claims of fraud by nondisclosure are [ ] subject to Rule 9's heightened pleading standard.' *Bittick v. JPMorgan Chase Bank, NA*, No. 4:11–CV–812–A, 2012 WL 1372126, at *6 (N.D. Tex. Apr. 18, 2012)"); *Rivers v. Wells Fargo Home Mortg.*, 2013 WL 1389977, at *2 (applying Rule 9(b) to fraud and fraud-by-nondisclosure claims); *Alvarez v. Lloyds*, CIVIL ACTION NO. B–10–1932012, WL 12895260, at *2–3 (S.D.Tex., May 15, 2012) (same).

Rule 9(b) provides that, when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy the heightened pleading standard of Rule 9(b), a plaintiff "must plead with 'specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent.'" *Matthews*, 2015 WL 892954, at *3 (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696). *See also Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003) (holding that Rule 9(b) requires that "the who, what, when, where, and how [ ] be laid out."). A failure to satisfy Rule 9(b)'s pleadings standards will subject a fraud claim to dismissal, just as a failure to state a claim will under Rule 12(b)(6). *Taylor*, 2017 WL 2362493, at *3 (citing *Kiper v. BAC*

*Home Loans Servicing, LP*, 884 F.Supp.2d 561, 568 (S.D. Tex. 2012), *aff'd,* 534 Fed.Appx. 266 (5th Cir. 2013) and *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

Although Plaintiffs purport to raise both "fraud" and common-law fraud claims, Plaintiffs have not distinguished their fraud claim from their common-law fraud claim, or cited a statutory basis for their fraud claim that would require this Court to treat the fraud claim as something other than a common-law fraud claim. The Court will, therefore, construe Plaintiffs' Original Petition as asserting a common-law fraud claim and a fraud-by-nondisclosure claim.[3]

To prevail on their common-law fraud claim, Plaintiffs must satisfy the requirements of Rule 9(b) and identify the speaker that made the alleged fraudulent representation. *See Plotkin v. IP Axess, Inc.,* 407 F.3d 690, 696 (plaintiff must plead with "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent."); *Taylor,* 2017 WL 2362493, at *3 (same); *Matthews,* 2015 WL 892954, at *3 (same). Plaintiffs have not identified the speaker who allegedly informed them that their Note would be modified or reinstated if they paid $45,000.00. Dkt. No. 1-4 at 2-7; Dkt. No. 1-5 at 2. Instead, they merely attribute these remarks to Defendants or the servicing agent, SPS. *Id.* Having failed to identify the speaker, Plaintiffs have also failed to demonstrate that the speaker

---

[3] Plaintiffs' proposed First Amended Original Complaint includes a common-law fraud claim, but does not include a "fraud" claim or a fraud-by-nondisclosure claim. *See* Dkt. No. 13-2. Their omission of the "fraud" claim constitutes some evidence that Plaintiffs do not wish to pursue a claim of statutory fraud.

knew that the representation was false, or that the speaker made the representation as a positive assertion recklessly, without any knowledge of its truth.  Having failed in these regards, Plaintiffs have not demonstrated that the speaker knew that Plaintiffs would act upon the alleged misrepresentation. Accordingly, Plaintiffs common-law fraud claim is subject to dismissal.  *See Taylor*, 2017 WL 2362493, at *3; *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758.

Because Plaintiffs have not satisfied these elements of common-law fraud, they have also failed to satisfy the elements of fraud by nondisclosure.  *See United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567 (noting that claims alleging fraud by nondisclosure in Texas must satisfy "all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose."); *Wise v. Wilmoth*, 2017 WL 3267924, at *11 (same); *Soto v. Lloyds*, 2016 WL 6883174, at *3 (same); At a minimum, Plaintiffs have not satisfied the second and third elements of fraud by nondisclosure.  *See Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001) (discussing the elements of fraud by nondisclosure).  Plaintiffs have also failed to show that the speaker owed Plaintiffs a duty of disclosure.

Plaintiffs' fraud claims also fail because they have not shown that they reasonably relied upon the servicing agent's alleged misrepresentations.  "[O]ne of the elements of a fraud claim is that the plaintiff actually and justifiably relied on the misrepresentation."  *TMI, Inc. v. Brooks*, 225 S.W.3d 783, 795 (Tex. App.—

Houston [14th Dist.], 2007, pet. denied) (citing *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (en banc)); *Matthews*, 2015 WL 892954, at *3 (same).  Here, Plaintiffs' Note states that it represents the final agreement of the parties and "**MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**"  Dkt. No. 12-2 at 3 (capitalization and emphasis in original).  Plaintiffs' fraud claims are based on the servicing agent's alleged statements.  These statements contradict the language of their Note.  Plaintiffs' reliance on these statements are not reasonable as a matter of law.  *See Matthews.*, 2015 WL 892954, at *3 (plaintiff's reliance on alleged oral representation that contradicted the terms of his loan agreement were "not reasonable as a matter of law") (citing *Milton v. U.S. Bank Nat. Ass'n*, 508 Fed. App'x 326, 330 (5th Cir. 2013), and *TMI, Inc. v. Brooks,* 225 S.W.3d 783, 795).

To the extent that Plaintiffs' fraud claims are based upon injuries suffered as a result of Defendants' alleged breach of contract, Plaintiffs' fraud claims are also barred by the economic-loss rule.  The economic-loss rule "bars tort claims when the parties' relationship and their attendant duties arise from a contract."  *Kiper v. BAC Home Loans Servicing, LP*, 884 F.Supp.2d 561, 573; *Taylor*, 2017 WL 2362493, at *3 (same).

> To recover, a plaintiff must "show an injury independent from the subject matter of the contract."  *Nguyen v. Fed. Nat. Mortg. Ass'n*, 958 F. Supp. 2d 781, 792 (S.D. Tex. 2013) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998)).  The loss of title to a property due to a foreclosure "is an economic damage that arises

solely and directly from the alleged breach of [a] contractual relationship." *Roberts v. Fed. Home Loan Corp.*, No. Civ. A. H–11–3304, 2013 WL 1345222, at *6 (S.D. Tex. Mar. 30, 2013). . . .[The Plaintiff's] fraud claim, even if better pleaded, would be barred by the economic-loss rule, because the claim "derives from the default and enforcement of the indebtedness at issue," making the "alleged tort damages . . . economic" in that they "arise from claims dependent upon the existence of a contract." *Kiper*, 884 F.Supp.2d at 573.

*Taylor*, 2017 WL 2362493, at *3.

Finally, to the extent that Plaintiffs seeks benefit-of-the-bargain damages incurred as a result of Defendants' alleged breach of the March 6th Agreement, the statute of frauds bars Plaintiffs' claims. *See Rivers*, 2013 WL 1389977, at *3 (quoting *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) for the proposition that that "the Statute of Frauds bars a fraud claim to the extent the plaintiff seeks to recover as damages the benefit of a bargain that cannot otherwise be enforced because it fails to comply with the Statute of Frauds."). To the extent that Plaintiffs seek injunctive relief to force compliance with the March 6th Agreement, their claims are also barred. *See id.* (holding that the statute of frauds also bars injunctive relief). For all of the foregoing reasons, Plaintiffs' claims of fraud and fraud by nondisclosure are subject to dismissal.

**Negligent Misrepresentation**. As noted above, Plaintiffs state that they negotiated with SPS "in a series of interactions that led to an agreement wherein Plaintiffs were to deposit Forty-Five Thousand Dollars ($45,000.00) with SPS and Plaintiffs' Note was either to be modified or reinstated." Dkt. No. 1-4 at 3. Plaintiffs claim that they were ready to deposit the money on March 7, 2017, but

were told that they could not proceed because the foreclosure sale had already occurred. *Id.* at 3-4. Plaintiffs assert that, during their negotiations, Defendants did not inform them that foreclosure was imminent, or that time was of the essence. *Id.* Plaintiffs contend that Defendants had a duty to inform them that, regardless of their negotiations and the resulting March 6th Agreement, the foreclosure sale would still occur on March 7, 2017. *Id.* Plaintiffs argue that, had Defendants so informed them, they could have exercised "other options," and taken "defensive actions" to prevent foreclosure. *Id.* at 4-5.

In summary, Plaintiffs argue that Defendants' statement, that the Note would be modified or reinstated if Plaintiffs paid $45,000.00, amounts to a negligent misrepresentation. Dkt. No. 1-4 at 4-5. Plaintiffs claim that Defendants made this misrepresentation during the course of their business, and in the course of a transaction in which they had a pecuniary interest. *Id.* at 4. Plaintiffs assert that Defendants did not exercise reasonable care in conveying their misrepresentation. *Id.* Plaintiffs also contend that they justifiably relied upon Defendants' misrepresentation, and suffered numerous injuries as a result. *Id.*

To prevail on a negligent misrepresentation claim under Texas law, a plaintiff must show that: (1) the defendant supplied the alleged misrepresentation in the course of defendant's business, or in a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant failed to exercise reasonable care or competence in obtaining the information or communicating it; and (4) the plaintiff

justifiably relied on the representation and suffered pecuniary loss as a result. *HostingXtreme Ventures, LLC v. Bespoke Group, LLC*, Civil Action No. 3:14-CV-1471-M, 2017 WL 4012922, at *11 (N.D. Tex., Aug. 23, 2017) (citing *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005)); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex., 2002) (citing *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).  "A negligent misrepresentation claim . . . cannot be based on a promise to act in the future, but must rather focus on misstatements of existing facts."  *HostingXtreme Ventures, LLC v. Bespoke Group, LLC*, 2017 WL 4012922, at *11 (citing *Thawar v. 7-Eleven, Inc*., 165 F. Supp. 3d 524, 533 (N.D. Tex. 2016)).

Defendants' alleged misrepresentation does not qualify as a misrepresentation of an existing fact.  According to Plaintiffs, Defendants stated that the Note *would be* modified or reinstated *if* Plaintiffs paid $45,000.00.  "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact."  *BCY Water Supply Corp. v. Residential Inv., Inc.,* 170 S.W.3d 596, 603 (Tex.App. Tyler, 2005) (citing *Miksch v. Exxon Corp*., 979 S.W.2d 700, 706 (Tex.App.-Houston [14th Dist.] 1998, pet. denied)).  Plaintiffs' negligent misrepresentation claim is subject to dismissal on this ground alone.

Defendants argue that Plaintiffs' negligent misrepresentation claim is also barred by the economic-loss rule.  Dkt. No. 12 at 7.  In *Owens v. BAC Home Loans Servicing*, *L.P.*, the court found that the economic-loss rule barred a similar negligent misrepresentation claim.  Civil Action No. H–11–2742, 2013 WL 1345209,

at \*4 (S.D.Tex., Mar. 30, 2013).  In so holding, the Court elaborated upon the economic-loss rule and took pains to differentiate between loss that is caused by the commission of a tort, and loss which arises from a breach of contract.

> Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).  A contractual relationship between two parties "may create duties under both contract and tort law," and "[t]he acts of a party may breach duties in tort or contract alone or simultaneously in both." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986).  Tort obligations "are in general obligations that are imposed by law — apart from and independent of promises made and therefore apart from the manifested intention of the parties — to avoid injury to others." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) (internal quotation marks omitted).  "If the defendant's conduct — such as negligently burning down a house — would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort.  Conversely, if the defendant's conduct — such as failing to publish an advertisement — would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *Id.* "The nature of the injury most often determines which duty or duties are breached.  When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes*, 711 S.W.2d at 618.

*Owens v. BAC Home Loans Servicing, L.P.*, Civil Action No. H–11–2742, 2013 WL 1345209, at \*4 (S.D.Tex., Mar. 30, 2013).

In this case, as in *Owens*, the rights and duties of the parties relating to loan repayment and foreclosure flow from the Note and the Deed of Trust.  *See Owens v. BAC Home Loans Servicing, L.P.*, 2013 WL 1345209, at \*4.  Defendants' alleged statement that it would reinstate or modify the Note if Plaintiffs paid $45,000.00 was, at best, a promise "to forgo a pre-existing contractual right to foreclose under

the loan agreement." *See id.* (quoting *Ellis v. PNC Bank, N.A.*, Civil Action No. 4:11–CV–03990, 2012 WL 2958266, *4 (S.D.Tex. July 19, 2012)).   "The loss of the home is an economic damage that arises solely and directly from the alleged breach of this contractual relationship."   *Id.* (citing *Sanghera v. Wells Fargo Bank, N.A.*, Civil Action No. 3:10–CV–2414–B, 2012 WL 555155, *6 (N.D.Tex. Feb. 21, 2012)). To the extent that Plaintiffs' claimed injuries here flow from the foreclosure of their home, the economic-loss rule bars their negligent misrepresentation claim.   *See id.* ("In light of the source of the parties' obligations and the nature of the plaintiffs' injuries, this tort cause of action is barred by the economic loss rule.").

Additionally, the Note signed by Plaintiff Garza is subject to the statute of frauds because it constitutes a loan agreement involving an amount in excess of $50,000.00.   *See* Dkt. No. 12-2 at 3; Tex. Bus. & Com. Code § 26.02(a)(2) and (b); *Garcia*, 2017 WL 4448243, at *2; *Owens*, 2013 WL 1345209, at *5.   As addressed above, an agreement to modify the terms of a mortgage loan or to accommodate late payment must be in writing pursuant to § 26.02(a)(2) of Texas Business and Commerce Code.   Plaintiffs have not submitted any evidence demonstrating that the March 6th Agreement was a written agreement, nor have they otherwise presented a written agreement to satisfy the statute of frauds.   Plaintiffs' negligent misrepresentation claim is "an improper attempt to circumvent the statue of frauds."   *See Owens*, 2013 WL 1345209, at *5 (citing "*Gamez v. Wells Fargo Bank, N.A.*, 2013 WL 960464, at *5 (S.D.Tex. 2013) (holding that the borrowers' negligent misrepresentation claims based on a lender's statement that foreclosure sale was

cancelled were barred by the statute of frauds)").  *See also Deuley v. Chase Home Finance, LLC*, 2006 WL 1155230, at *2 (S.D.Tex. Apr. 25, 2006) ("The oral modification in this case relates to the original loan agreement, which must be in writing because it exceeds $50,000.  Thus, the modification is also required to be in writing to comply with the statute of frauds.").    Plaintiffs' negligent misrepresentation claim should be dismissed.

**Violations of the DTPA**.  To prevail on a claim under the DTPA,[4] a plaintiff must show that: (1) they are a consumer under the Act; (2) the Defendants committed a false, deceptive or misleading act under § 17.46(b), "or engaged in an unconscionable action or course of action under § 17.50(a)(3);" and (3) "that the acts were a producing cause of actual damages."  *Buchine v. PHH Mortgage Corporation*, Civil Action No. H–17–1345, 2017 WL 4270721, at *4–5 (S.D.Tex., Sept. 26, 2017) (citing *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 907 (5th Cir. 2002) and *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 513 (Tex. 1998)).  To qualify as a consumer under the DTPA, the plaintiff must acquire or seek goods or services, by lease or by purchase. *Id*. (citing *Melody Home Mfg. Co.v. Barnes*, 741 S.W.2d 349, 351–52 (Tex. 1987) and *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 159 (Tex. App.—Fort Worth 2007, pet. denied)).  The goods or services "must form the basis of the complaint."  *Id*.

> "Generally, a person cannot qualify as a consumer if the underlying transaction is a pure loan because money is considered neither a good nor a service."  *Id*. at 160 (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173–74 (Tex. 1980)).  Although money is not a good or

---

[4] Tex. Bus. & Com. Code Ann. §§ 17.41–17.826 (West 2011 & Supp. 2017).

service under the Act, "Texas courts have departed from the 'facially simple statement' that a 'pure loan transaction lies outside the DTPA.'" *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 725 (5th Cir. 2013) (quoting *Walker v. FDIC*, 970 F.2d 114, 123 (5th Cir. 1992)). The Act applies to a loan "if the borrower's objective is to use the loan to purchase goods or services." *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp. 2d 176, 195 (S.D. Tex. 2007) (citing *La Sara Grain v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984)).

A mortgagor qualifies as a consumer under the Act if his "primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint." *Miller*, 726 F.3d at 725. A mortgagor challenging how an existing mortgage is serviced is not a "consumer" under the Act "because the basis of [the] claim is the subsequent loan servicing and foreclosure activities, rather than the goods or services acquired in the original transaction." *Rojas v. Wells Fargo Bank, N.A.*, 571 Fed.Appx. 274, 279 (5th Cir. 2014).

*Id.*

Plaintiffs' claim here challenges how their mortgage was serviced. Dkt. No. 1-4 at 2-3, 7. As such, they are not consumers under the DTPA because the basis of their claim concerns loan servicing and foreclosure activities, not the goods or services acquired with the Note. *See id.* at 5 (citing *Rojas v. Wells Fargo Bank, N.A.*, 571 Fed.Appx. 274, 279). Because Plaintiffs do not qualify as DTPA consumers, their DTPA claim is subject to dismissal.

**Plaintiffs' Requests for Equitable Relief**. Plaintiffs have requested a temporary injunction, a permanent injunction, a restraining order, and general "equitable relief." Dkt. No. 1-4 at 8-10. Plaintiffs also specifically ask the Court to enforce the March 6th Agreement, and set aside the foreclosure sale. *Id.* Plaintiffs have failed to rebut Defendants' evidence and arguments, or otherwise show that their claims have merit. For the reasons provided above, Plaintiffs have not

demonstrated an entitlement to legal or equitable relief. *See Howard v. AMH ROMAN TWO TX, LLC*, Case No. 4:15CV526, 2016 WL 3392417, at *5 (E.D.Tex., May 11, 2016) ("A request for equitable or injunctive relief must be premised upon the existence of a viable underlying legal claim. Here, Plaintiff's claims for legal relief have failed. Thus, his claims for equitable and injunctive relief also fail.") (collecting cases). *Hanna v. RFC Deutsche Bank Nat. Trust Co*., 2012 WL 1969948, at *5 (N.D.Tex., 2012) (same).

   **B.  Plaintiffs' Motion to Amend**.  As noted above, Plaintiffs' Motion to Amend seeks to add Defendants' outside foreclosure counsel, Shapiro Schwartz, L.L.P. (hereinafter, the "Law Firm"), as a new party.  Dkt. No. 13 at 2.  Plaintiffs indicate that the Law Firm must be joined as a defendant because one or more of its members "were integral entities of the transactions by and between Plaintiffs and Defendants[,]" such that the Law Firm is also responsible for proximately causing Plaintiffs' injuries.  *Id*. at 2.  Defendants' Response asserts that the Court should deny Plaintiffs' Motion to Amend because Plaintiffs are seeking to add the Law Firm for the sole purpose of defeating diversity jurisdiction.  Dkt. No. 14 at 1.

   Section 1447(e) of Title 28 governs when a party seeks to join a non-diverse defendant after the case has been removed to federal court.  *Cobb v. Delta Exports, Inc*., 186 F.3d 675, 677 (5th Cir. 1999) (citing 28 U.S.C. § 1447(e)).  Section 1447(e) provides that, "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  In

*Hensgens v. Deere & Co.*, the Fifth Circuit noted that the decision to allow the joinder of the non-diverse party lies within the court's "sound discretion." 833 F.2d 1179, 1182 (5th Cir. 1987). In exercising this discretion, the Fifth Circuit instructed courts to balance "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources" against the diverse defendant's "interest in retaining the federal forum." *Id.* at 1182. The *Hensgens* Court identified four factors to consider when weighing these competing interests: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities." *Agyei v. Endurance Power Products, Inc.*, 198 F.Supp.3d 764, 770 (S.D.Tex., 2016) (citing *Hensgens*, 833 F.2d at 1182; *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005); and *Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 & n. 11 (5th Cir. 1991)).

Taking these factors out of order, the Court finds that Plaintiffs have been dilatory in moving to amend. Plaintiffs had until July 21, 2017 to join new parties. Dkt. No. 11 at 1 (Scheduling Order). Their Motion to Amend is untimely as it was filed on July 30, 2017. More critically, Plaintiffs did not file their Motion to Amend until after Defendants had already moved for summary judgment, and Plaintiffs have filed no response to Defendants' Motion for Summary Judgment. Defendants point out that Plaintiffs were fully aware of the Law Firm's role in the foreclosure

proceedings prior to filing their Original Petition.  Dkt. No. 14 at 8.  The Law Firm signed and sent the Notice of Acceleration and Posting to Plaintiffs, on its own letterhead.  *See* Dkt. No. 12-6 at 1-3.  Defendants additionally claim that Plaintiffs have yet to seek discovery in this case "so they could not have learned anything new" which would have prompted them to add the Law Firm as a defendant. Plaintiffs have not disputed these allegations.  Plaintiffs also filed their Motion to Amend nearly four months after filing their Original Petition.  *Compare* Dkt. No. 13 at 5, *with* Dkt. No. 1-4 at 1.  The second of the four *Hensgens* factors weighs against granting Plaintiffs' Motion to Amend.

With respect to the third *Hensgens* factor, Plaintiffs have not shown that they will be significantly injured if the Court denies their Motion to Amend.  At the threshold, the Court notes that Plaintiffs have not filed a reply to Defendants' Response to Plaintiffs' Motion to Amend, and Defendants filed their Response nearly two months ago.  As the arguments contained in Defendants' Response are largely correct, they require rebuttal.  Plaintiffs' Motion to Amend claims that the Law Firm must be joined as a defendant because one or more of its members "were integral entities of the transactions by and between Plaintiffs and Defendants[,]" such that the Law Firm is also responsible for proximately causing Plaintiffs' injuries.  Dkt. No. 13 at 2.  But, Plaintiffs have not elaborated upon this statement. Because Plaintiffs' allegations against the Law Firm are materially the same as their allegations against the existing Defendants in this lawsuit (*Compare* Dkt. No. 1-4, *with* Dkt. No. 13-2), they have failed to demonstrate that their amendment is

not futile, both for the reasons identified in this Report and Recommendation, and for the reasons identified in Defendants' Response to Plaintiffs' Motion to Amend. *See* Dkt. No. 14.   Finally, assuming that they could formulate a valid claim, Plaintiffs could still sue the Law Firm in state court once this lawsuit is dismissed because the Law Firm and Plaintiffs are both residents of Texas and the complained of conduct occurred in March of 2017.

This brings the Court to the first and fourth *Hensgens* factors.   Defendants argue that Plaintiffs' are attempting to amend their Original Petition solely to defeat diversity jurisdiction.   Dkt. No. 14 at 5-7.   This argument is persuasive given that Plaintiffs' proposed First Amended Original Complaint specifically states that "Plaintiffs reserve the right to assert and filed an Notice of Remand at all times that same becomes available."   Dkt. No. 13-2 at 2 (errors in original).   This argument is also persuasive in light of Plaintiffs' failure to respond to Defendants' Motion, or otherwise meet their burdens under Rules 12(c) and 56.   If the Court were to grant Plaintiffs' Motion to Amend, the Court would have no choice but to remand this action back to state court, thus depriving Defendants of their requested disposition under Rules 12(c) and 56.   *See Hensgens*, 833 F.2d 1179, 1181 ("Although it is true that most subsequent events will not defeat jurisdiction, addition of a nondiverse defendant will"); *Rouf v. Cricket Commc'ns, Inc.*, No. H–13–2778, 2013 WL 6079255, at *2 (S.D.Tex. Nov. 19, 2013) ("An amendment to the complaint that adds a non-

diverse party after removal will defeat jurisdiction, and the court must remand.")
*Agyei v. Endurance Power Products, Inc.*, 198 F.Supp.3d 764, 769 (same).[5]

Further, as Plaintiffs' proposed claims against the Law Firm are materially the same as their allegations against the current Defendants, minus a few claims, they have not demonstrated that law or equity should allow them to amend.  As Plaintiffs have failed to provide the Court with any other relevant factors to consider, the Court finds that review under all four *Hensgens* factors weighs against granting Plaintiffs' Motion to Amend.  Thus, balancing all relevant factors and equities, it is recommended that the Court deny Plaintiffs' Motion to Amend.

## V. Recommendation

For the foregoing reasons, it is recommended that: (1) Defendants' Motion (Dkt. No. 12) be **GRANTED**; (2) Plaintiffs' Motion to Amend (Dkt. No. 13) be **DENIED**; and (3) Plaintiffs' Original Petition be dismissed with prejudice.

## VI.  Notice to the Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

---

[5]  The *Agyei* Court identified some contrary case law, but noted that this case law is not binding precedent in this Circuit.  *Agyei.*, 198 F.Supp.3d 764, 770, n. 4.

provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

      Signed on this 25th day of October, 2017.

                                       _____

                                      **Ignacio Torteya, III**
                                      **United States Magistrate Judge**